IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NICHOLAS TUDI,)
)
    Plaintiff,)
)
 -vs-) Civil Action No. 13-1423
)
CAROLYN W. COLVIN,)
COMMISSIONER OF SOCIAL SECURITY,)
)
    Defendant.)

AMBROSE, Senior District Judge.

## OPINION
### and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 7 and 9). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 8 and 10). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Defendant's Motion for Summary Judgment (Docket No. 9) and denying Plaintiff's Motion for Summary Judgment. (Docket No. 7).

### I. BACKGROUND

Tudi brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security income pursuant to the Social Security Act ("Act"). Tudi filed an application for a period of disability and disability insurance benefits,[1] as well as an application for supplemental security income. In both applications Tudi asserts a disability beginning on September 1, 2001. The claims were denied on January 7, 2010. Administrative Law Judge ("ALJ") Lamar Davis held a video hearing on

---

[1] Tudi's last date insured is March 31, 2010. Thus, for purposes of his DIB claim, he must demonstrate his eligibility for benefits on or before that date in order to receive those benefits.

May 17, 2012 during which Alina Kurtanich, an impartial vocational expert, testified. At the time of the hearing, Tudi was 52 years old and had a high school education. (R. 36) He had past relevant work experience in the heavy exertional range as a steel laborer and ironworker. (R. 36) On May 22, 2012, the ALJ issued an opinion denying benefits. (R. 15-27). Specifically, although the ALJ found that Tudi suffered from numerous severe impairments which cause significant limitations in his ability to perform basic work activities, including: seizures, leg numbness, degenerative disc disease, hepatitis C, a mood disorder, attention deficit hyperactivity disorder ("ADHD"), personality disorder and a history of drug and alcohol abuse, he retained the residual functional capacity to perform light work with certain restrictions. (R. 19) After exhausting all of his administrative remedies, Tudi filed this action.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 7 and 9). The issues are now ripe for review.

## II. LEGAL ANALYSIS

### A. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360

2

(3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

**B.     Discussion**

Tudi's argument consists of the following: (1) the ALJ erred in assessing the residual functional capacity; (2) the ALJ improperly relied upon the vocational expert's testimony when that testimony conflicted with the directives of the Dictionary of Occupational Titles ("DOT") and (3) the ALJ inappropriately rejected an answer to a hypothetical posed to the vocational expert. I will address the arguments seriatim.

        1)     Tudi's Residual Functional Capacity

Tudi urges that the ALJ failed in not according more weight to the report issued by Dr. Olfman, a consultative examiner. Tudi's contentions in this regard amount to a challenge to the ALJ's findings regarding residual functional capacity. Following a one-time exam on November 25, 2009, Dr. Olfman prepared a report noting that Tudi had "marked" restrictions in his ability to: make judgments on simple work-related decisions; interact appropriately with the public, supervisors and co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting. (R. 300) Dr. Olfman also noted that Tudi had a limited ability to: shop; cook; take public transportation; pay bills; maintain a residence; get along with family, friends and neighbors; make friends; and interact with authority figures. (R. 297).

After reviewing the record and the parties' briefs, I find that the ALJ's decision regarding Tudi's residual functional capacity is supported by substantial evidence of record. For instance, as the ALJ noted, Dr. Olfman may have found Tudi had "marked" restrictions in several respects, but she also concluded that his story was "rehearsed" and that Tudi appeared intent on "pleading his case" and "selling his case." (R. 296-297).  Dr. Olfman also observed that Tudi was successful at starting a business and finding a trade; he was capable of abstract reasoning; and that, after years in jail, Tudi was coming to the realization that he was not going to be the success he imagined he would be, and he couldn't reconcile himself with the thought that he

may have to return to low wage work. (R. 296). In short, Dr. Olfman's findings were internally inconsistent.

The ALJ's finding as to Tudi's residual functional capacity is also supported by other medical evidence of record. For instance, the Mental Residual Functional Capacity Assessment and Psychiatric Review Technique proffered by Dr. Phyllis Brentzel supports his conclusions. (R. 301-318). Upon reviewing the evidence of record, Dr. Brentzel offered the following conclusion:

> The claimant's basic memory processes are intact. He can make simple decisions. He is able to carry out very short and simple instructions. He is able to maintain concentration and attention for extended periods of time. Moreover, he would be able to maintain regular attendance and be punctual. He would not require special supervision in order to sustain a work routine. Additionally, he is able to interact appropriately with the general public. His ADL's and social skills are functional. Also, he is self-sufficient. He can function in production oriented jobs requiring little independent decision making. There are no restrictions in his abilities in regards to understanding and memory.

(R. 303).[2] Moreover, Dr. Brentzel described Tudi's statements as only "partially credible" and found that Tudi was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment." (R. 303-304).

Furthermore, Tudi's records from Allegheny Correctional Health Services indicate that his mental health examinations were good: his appearance was normal; his speech was coherent and relevant; his ability to relate to others was good; his insight was good; his judgment was good; his recent and remote memory was good; his intelligence was normal and his thought content was normal. (R. 331-35, 435-39). Additionally, while incarcerated, Tudi lived

---

[2] Dr. Brentzel noted that her findings were partially consistent with Dr. Olfman's. She found that the "examining source statements in the report concerning the claimant's abilities in the area of making occupational adjustments are fairly consistent with the other evidence in the file. However, the examining source statements regarding his abilities in the areas of making performance adjustments and making personal and social adjustments are not consistent with all of the medical and non-medical evidence in the claims folder. The evidence provided by the examining source reveals only a snapshot of the claimant's functioning and is an overestimate of the severity of his limitations. Therefore, great weight cannot be given to the examining source's opinion."

5

in regular population and worked in the kitchen. (R. 437, 472).

Significantly, Tudi did not provide a statement from any of his treating physicians suggesting that his mental impairments impacted his functional abilities. He complains of long-standing issues with anxiety and learning disabilities. Yet the record is devoid of any support from a single one of Tudi's long term treating physicians.

Consequently, I find that substantial evidence of record supports the ALJ's decision as to Tudi's residual functional capacity. The ALJ's treatment of Dr. Olfman's report is entirely appropriate.

### 2) Alleged Conflict Between VE and DOT

Tudi also argues that the ALJ erred in relying on the vocational expert's testimony, because such testimony is allegedly inconsistent with the physical exertion requirements of work in the national economy as set forth in the Dictionary of Occupational Titles ("DOT") and its companion publication, Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles ("SCO"). *See* ECF No. [8], p. 24. Tudi contends that the job descriptions in the SCO for each of the jobs identified by the vocational expert (electronic worker, marker, garment sorter) reveal that each job is, in fact, inconsistent with Tudi's physical restrictions. According to Tudi, the SCO indicates that all three jobs require frequent reaching. *See* ECF Docket No [8], p. 25 n. 85, citing, SCO, p. 98 (for marker), 203 (for garment sorter), p. 309 (for electronics worker). Yet the ALJ found that Tudi was restricted to no more than occasional overhead reaching or unsupported forward extension. Consequently, Tudi reasons that he is incapable of performing any of these jobs and the ALJ erred in relying on the vocational expert testimony.

I turn to SSR 00-4P for guidance on this matter. *See* 2000 WL 1898704. It provides that:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a

6

> reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. *At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.*

*See* SSR 00-4P, 2000 WL 1898704 (emphasis added). SSR 00-4P also explains that a reasonable explanation for a conflict or apparent conflict, which may provide a basis for relying on the evidence from the vocational expert, rather than the DOT information, exists where "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." *Id.* The Court of Appeals for the Third Circuit similarly requires an ALJ to address and resolve any material inconsistencies or conflicts between the vocational expert's testimony and the DOT descriptions. *See Boone v. Barnhart*, 353 F.3d 203, 206 (3d. Cir. 2004). Indeed, the failure to do so may necessitate a remand. Id.

After careful review, however, I find that there was no inconsistency or conflict. Significantly, the ALJ's hypothetical question to the vocational expert specifically identified Tudi's restrictions regarding reaching.[3] Consequently, the vocational expert had this information in hand when she responded that Tudi could perform the tasks of electronic worker, garment sorter and marker. *See Wheeler v. Apfel*, 2224 F.3d 891, 897 (8th Cir. 2000) (finding no conflict between the DOT and a vocational expert's testimony when the ALJ explicitly detailed the claimant's limitations in the hypothetical). Further, at the hearing, the ALJ asked the vocational

---

[3] The ALJ stated: "In addition, this hypothetical individual is limited in the use of the bilateral upper extremities to no more than occasional overhead reaching or unsupported forward extension. The unsupported forward extension, of course, is holding the arms out at shoulder height or above with no surface or tabletop upon which to support or rest the weight of the upper limb." (R. 48).

7

expert whether her testimony comported "with the criteria contained in the Dictionary of Occupational titles." (R. 50). The vocational expert responded that it did. (R. 50). The ALJ was entitled to rely upon the vocational expert's testimony. *See Green v. Astrue*, Civil Action No. 10-468, 2010 WL 4929082 at * 6 (W.D. Pa. Nov. 30, 2010) (Ambrose, J.); *Simpson v. Astrue*, Civ. No. 10-1874, 2011 WL 1883124 at * 7 (E.D. Pa. May 17, 2011); *Gibbons v. Barnhart*, 85 Fed. Appx. 88 (10th Cir. 2003) (stating that "[t]he vocational expert specifically testified that the limitations of simple reading and writing were consistent with the alternative jobs he identified" and "once the VE stated that he was relying on the DOT, the ALJ had no further duty to investigate.").

        3)     Vocational Expert Testimony

Finally, Tudi argues that the ALJ erred in failing to discuss in his opinion the hypothetical questions which Tudi contends accurately reflect his impairments. During the hearing, Tudi's attorney and the vocational expert engaged in the following exchange:

> Q: I'm asking you to consider the combined effect of a number of limitations. If someone is moderately limited in following a schedule, maintaining attendance, being punctual, in completing a normal workweek and workday without interruptions from psychologically-based symptoms, perform at a consistent pace, interact with the public, respond to criticism from supervisors, get along with coworkers or peers without behavioral extremes, and respond appropriately to changes in a routine work setting, how might that affect the hypothetical person's ability to maintain regular and continuous employment?
> A: The combination of all those limitations will render this person unable to perform any work.

(R. 51-52). An ALJ is required to accept only hypothetical questions which accurately reflect a plaintiff's impairments. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). The hypothetical posed by Tudi's attorney does not accurately reflect the impairments as found and articulated in the residual functional capacity. Consequently, the ALJ was not required to abide by the vocational expert's answer.

8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS TUDI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Civil Action No. 13-1423 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

THEREFORE, this 23rd day of June, 2014, it is ordered that the decision of the ALJ is affirmed and Plaintiff's Motion for Summary Judgment (Docket No. 7) is denied and Defendant's Motion for Summary Judgment (Docket No. 9) is granted.

                        BY THE COURT:

                        s/ Donetta W. Ambrose
                        Donetta W. Ambrose
                        United States Senior District Judge